UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                      Plaintiff,

v.

JOHNSON CONTRACTING OF WNY,
INC., et al.

                      Defendants.
_____

**REPORT, RECOMMENDATION AND ORDER**

11-CR-00241(A)(M)

        This case was referred to me by Hon. Richard J. Arcara for supervision of all pretrial proceedings [2].[1] Before me are the motions of defendant Donald Grzebielucha to dismiss Count 18 of the Indictment (Terranova Affirmation [87], ¶13), defendant Evan Harnden to dismiss Counts 8 through 14 of the Indictment [90], and defendant William Manuszewski to dismiss Counts 19 through 22 of the Indictment (Stachowski Declaration [109], ¶¶51-112), to suppress statements (id., pp. 44-45) and to strike surplusage (id., ¶¶4-49).[2] Oral argument was held on August 16, 2012 [115].

        For the following reasons, I order that defendant Manuszewski's motion to strike surplusage be denied; and I further recommend that defendants' motions to dismiss counts of the Indictment, and defendant Manuszewski's motion to suppress statements, be denied without prejudice.

---

    [1]    Bracketed references are to the CM/ECF docket entries.

    [2]    At the August 16, 2012 oral argument ([115], p. 51), the parties agreed that all other aspects of defendants' pretrial motions are withdrawn. This was confirmed in my August 17, 2012 Text Order [113].

# BACKGROUND

The 23-count Indictment arises from asbestos abatement work performed at the Kensington Towers Apartment Complex in Buffalo, New York, which consists of six unoccupied buildings that were owned by the Buffalo Municipal Housing Authority ("BMHA"). Indictment [1], ¶33. The BMHA entered into a development agreement with HLM Holdings, LLC ("HLM") and on or about May 4, 2009, HLM contracted with Cambria Contracting to perform the environmental abatement and demolition of the Kensington Towers. Id., ¶¶35, 41. In turn, Cambria Contracting hired defendant Johnson Contracting of WNY, Inc. ("Johnson Contracting") to perform the asbestos abatement and hired defendant JMD Environmental, Inc. ("JMD") to perform air sampling and project monitoring. Id., ¶42.

After the abatement was completed by Johnson Contracting, JMD would perform a visual inspection that the asbestos had been removed and take air samples. Government's Consolidated Response [106], p. 6. After each building was cleared by JMD, building inspectors from the City of Buffalo would perform an inspection and complete certifications that the work had been performed in accordance all federal and state regulations. Id. It is alleged that Johnson Contracting removed the asbestos without complying with the federal and state regulations governing asbestos removal, that JMD failed to adhere to the requirements for taking air monitoring samples, and that Johnson Contracting, JMD and the City of Buffalo Inspectors falsely certified that all regulated asbestos had been removed. Indictment [1].

## ANALYSIS

A. **Defendant Grzebielucha's Motion to Dismiss Count 18**

Defendant Grzebielucha, a building inspector with the City of Buffalo, Department of Permit and Inspection Services, is charged with knowingly and willfully making and using a false document, a Certification of Asbestos Removal Final Inspection Report dated August 25, 2009 (the "Certification") indicating that he inspected Building A-1 and that removal of asbestos was complete and in compliance the applicable regulations, in violation of 18 U.S.C. §1001(a)(3). Indictment [1], Count 18.

Defendant Grzebielucha argues that "[t]he grand jury's major source of proof presented against [him] was Special Agent Angela Rivera . . . [of] the United States Environmental Protection Agency's Criminal Investigation Division." Terranova Affirmation [87], p. 5. Relying on the grand jury transcript of the witness testimony, which was voluntarily produced by the government subject to a protective order [69], he argues that the charges against him "arose from Special Agent Rivera's opinion that the [Certification] was false and the government's use of a City website FAQ page, [which did not accurately state the law], in place of a City of Buffalo Code provision". Terranova Affirmation [87], p. 6. According to defendant Grzebielucha, "[t]he government's attorney and [Special Agent Rivera] completely misled the grand jurors". Id., p. 6.

Defendant Grzebielucha concedes that he "is not challenging the sufficiency of the proof presented to the grand jury", but rather argues that Count 18 "is unconstitutionally insufficient in that [it] permits prosecution for a crime not submitted to the grand jury." Id. While the distinction between these two arguments is not clear, Defendant Grzebielucha conceded at oral

argument that his claim essentially is that Count 18 is the product of prosecutorial misconduct. In response, the government "opposes the defendant's broad and unsubstantiated allegation of misconduct by the government . . . . [S]everal exhibits, including asbestos surveys, photographs, sample results, and inspection reports, were introduced to the grand jury which depicted the condition of building A1 at the time the defendant certified that all asbestos had been removed" and "overwhelmingly established that a significant amount of asbestos remained in the building that would have been apparent upon immediate entry into the building". Government's Consolidated Response [106], pp. 27-28.

A court may "dismiss an indictment because of misconduct before the grand jury . . . where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions." United States v. Williams, 504 U.S. 36, 46 (1992). To warrant dismissal, the misconduct must also be prejudicial to the defendant. *See* Bank of Nova Scotia v. United States, 487 U.S. 250, 2254-256 (1988). Thus, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Id. at 256.

Arguments that go to the sufficiency or competency of the evidence presented to the grand jury may not be cloaked as claims of prosecutorial misconduct:

> "It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'" Williams, 504 U.S. at 55.

By pointing to defects in the evidence presented to the grand jury, that appears to be what defendant is attempting to do here. See United States v. Kasper, 2012 WL 243609, *4 (W.D.N.Y. 2012) (Skretny, J.), recon. denied, 2012 WL 2573259 (defendants "have recast arguments that at their core go to the sufficiency or competency of the evidence presented to the grand jury as protestations that the prosecutor misled the grand jury and prevented it from acting independently. Entertaining such challenges 'would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it'").

Defendant does not dispute the government's representation that the allegedly defective evidence he points to was only a portion of the evidence introduced to the grand jury establishing that a significant amount of asbestos remained in the building at the time defendant completed the Certification. Therefore, I conclude that defendant Grzebielucha has not established that he was prejudiced by the prosecutor's alleged misconduct, and recommend that his motion to dismiss Count 18 be denied.

**B.     Defendant Harnden's Motion to Dismiss Counts 8 through 14**

**1.     Count 8**

Defendant Harnden, a field supervisor for JMD (Indictment [1], p. 3, ¶5), is charged in Counts 8 through 14 of the Indictment. Count 8 alleges that defendant Harnden and others conspired "[t]o defraud the United States, that is, to hamper, hinder, impede, impair, and obstruct . . . the lawful and legitimate functions of the EPA and OSHA in assuring that those performing asbestos abatement and sampling activities complied with environmental and worker safety laws . . . ; and . . . [t]o knowingly and willfully make and use false documents in a matter

within the jurisdiction of the executive branch of the Government . . . contrary to Title 18, United States Code, Section 1001(a)(3)." Indictment [1], Count 8. As to the manner and means by which the conspiracy was accomplished, it is alleged that defendant Harnden "conducted final air clearance sampling at times when visible asbestos debris from the project remained in violation of [New York State Industrial] Code Rule 56". Id., p. 36, ¶5.

In seeking dismissal, defendant Harnden argues that Count 8 "is alleging violations of New York State Code 56 by the air monitors on the Kensington Towers Demolition Project via a federal conspiracy statute. However, . . . there is no State Implementation approved . . . by the EPA making Code Rule 56 federally enforceable . . . . There is no federal statute, rule or regulation governing the conduct of air monitors which the Government is claiming to have been violated." Henry Affidavit [90], ¶21.

"Section 371 can be violated in either of two ways: first by conspiring to commit an offense against the United States and second, by conspiring to defraud the United States." United States v. D'Amato, 722 F.Supp. 221, 225 (E.D.Pa. 1989). The Indictment permissibly charges defendant under both clauses, "and a conviction . . . will be sustained if the evidence justifies a finding that the statute was violated in *any* of the ways alleged." United States v. Astolas, 487 F.2d 275, 280 (2d Cir.1973), cert. denied, 416 U.S. 955 (1974) (emphasis added).

Unlike the conspiracy to commit an offense clause, "[i]n order to convict under the conspiracy to defraud clause of section 371, the government need not charge or prove that [the defendant] agreed to commit, or actually did commit a substantive offense". United States v. Bucey, 876 F.2d 1297, 1312 (7th Cir.), cert. denied, 493 U.S. 1004 (1989); see United States v. Rosengarten, 857 F.2d 76, 79 (2d Cir. 1988), cert. denied, 488 U.S. 1011 (1989)("the impairment or

obstruction of a governmental function contemplated by section 371's ban on conspiracies to defraud need not involve the violation of a separate statute"). Thus, even accepting defendant Harnden's argument that "[t]here is no federal statute, rule or regulation governing the conduct of air monitors which the Government is claiming to have been violated" (Henry Affidavit [90], ¶ 21), an underlying substantive offense is not necessary to establish a conspiracy to defraud. Therefore, I recommend that defendant Harnden's motion to dismiss Count 8 be denied.

2. **Counts 9 through 14**

Counts 9 through 14 of the Indictment [1] each charge defendant Harnden and others with violations of the Clean Air Act pursuant to 42 U.S.C. §§7412 and 7413(c)(1), and with aiding and abetting, in violation of 18 U.S.C. §2. Defendant Harnden moves to dismiss these counts by arguing that "there is no state implementation plan approved by the EPA that triggers federal enforcement against [him]" and that these counts "allege conduct not encompassed by the duties, responsibilities or work [he], through JMD, was hired to perform at the Kensington Towers Demolition Project". Henry Affidavit [90], ¶¶27-28. The government responds that defendant Harnden is also charged in these counts as an aider and abettor, which does not require him to have committed the underlying crime. Government's Consolidated Response [106], pp. 41-42. I agree with the government.

"The aiding and abetting statute requires only 'that the underlying crime was committed by someone other than the defendant and that the defendant himself either acted or failed to act with the specific intent of advancing the commission of the underlying crime.' " United States v. Litwok, 678 F.3d 208, 213 (2d Cir. 2012). Thus, even accepting defendant Harnden's arguments

that there could be no federal enforcement against him for the alleged violations of the Clean Air Act and that the alleged conduct was not encompassed by his duties, he may still be guilty as an aider and abettor for criminal violations of the Clean Air Act committed by others.

Anticipating that the government would rely on the aiding and abetting statute in opposition to his motion, he argues that "[a]t no time did [his] duties have him aid, abet . . . or procure the asbestos abatement contractor . . . or its employees, in allegedly failing to adequately wet regulated asbestos". Henry Affidavit [90], ¶¶32-33. However, since generally "[t]here is no such thing as a motion for summary judgment in a criminal case", United States v. Parker, 165 F. Supp.2d 431, 458 (W.D.N.Y. 2001) (Arcara, J.), these are factual issues that must be resolved by the jury. Therefore, I recommend that defendant Harnden's motion to dismiss Counts 9 through 14 be denied.

**C.     Defendant Manuszewski's Motion to Dismiss Counts 19 through 22**

Defendant Manuszewski, a building inspector with the City of Buffalo, Department of Permit and Inspection Services, is charged in Counts 19 through 22 with knowingly and willfully making and using false documents, Certifications dated October 22, 2009, December, 28, 2009, and January 15, 2010 indicating that he inspected Buildings B-2, B-6, A-3, A-5 and that the removal of asbestos was complete and in compliance the applicable regulations, in violation of 18 U.S.C. §1001(a)(3). Indictment [1], Counts 19-22.

According to defendant Manuszewski, the City's regulation of asbestos abatement inspections is preempted by state law. Stachowski Declaration [109], ¶¶77, 91. He argues that Counts 19 through 22 must therefore be dismissed because he "did not possess the authority and/or

power to inspect visually any of the buildings of the Kensington Towers with respect to the Federal Clean Air Act and more critically, Rule 56 of the State of New York". Id., ¶58.[3] The government responds that this "argument is simply irrelevant" since "an actor's authority to make such a document is not an element of the offense". Government's Consolidated Response [106], pp. 48-49. I agree with the government. A violation of 18 U.S.C. §1001(a)(3) "requires proof of (1) a knowingly false writing (2) which is material and (3) regarding any matter within the jurisdiction of a branch of the United States government". United States v. Ortega, 2011 WL 3267896 (D. Ariz. 2011), adopted by, 2011 WL 3267377. There is simply no requirement that the false writing is issued by an individual with authorization to do so.

       Defendant Manuszewski also argues that "there is no jurisdiction of the United States over [the Certifications]". Stachowski Declaration [109], ¶¶112, 30-31. I disagree. "[T]he term 'jurisdiction' should not be given a narrow or technical meaning for purposes of [§] 1001". Bryson v. United States, 396 U.S. 64, 70-71 (1969). Jurisdiction is determined by whether an agency or department of the Federal government "has the power to exercise authority in a particular situation". United States v. Rodgers, 466 U.S. 475, 479 (1980).

       The Indictment alleges that in the Certifications prepared by defendant Manuszewski he represented that "all specifications or conditions were in accordance with all New York State and *Federal regulations*". Indictment [1], pp. 56, 58, 59, 60 (emphasis added). Based upon these allegations, and recognizing that jurisdiction is not be interpreted narrowly, for purposes of this motion I conclude that the representations contained in the Certifications were within the

---

[3] Defendant Manuszewski's pretrial motion repeatedly alleges that the grand jury was "misled". *See, e.g.*, Stachowski Declaration [109], ¶¶27, 94, 109. However, he does not move to dismiss for prosecutorial misconduct.

jurisdiction of a branch of the United States government. In any event, "a violation of §1001 does not require that the false statement must actually have been submitted to a department or agency of the United States, but rather that it was contemplated that the statement was to be utilized in a matter which was within the jurisdiction of such department or agency". United States v. Candella, 487 F.2d 1223, 1227 (2d Cir. 1973), cert. denied, 415 U.S. 977 (1974). *See* United States v. Davis, 8 F.3d 923, 929 (2d Cir. 1993). Therefore, I recommend that defendant Manuszewski's motion to dismiss Counts 19 through 22 be denied.

**D.** **Defendant Manuszewski's Motion to Suppress Statements**

Defendant Manuszewski's motion to suppress statements was not accompanied by an affidavit or declaration based upon personal knowledge. At the August 16, 2012 oral argument, his attorney agreed that if no such document was submitted by August 23, 2012, the motion to suppress would be deemed withdrawn [115], p. 45. Since defendant Manuszewski did not thereafter file an affidavit or declaration in support of his suppression motion, his motion to suppress statements is therefore deemed withdrawn.

**E.** **Defendant Manuszewski's Motion to Strike**

Counts 19 through 22 of the Indictment each expressly incorporate by reference its introductory allegations ([1], pp. 2-15, ¶¶1-42), as well as the allegations set forth in Counts 1 through 8, alleging conspiracy and violations of the Clean Air Act against certain of the co-defendants. In moving to strike these allegations, defendant Manuszewski argues that they have no relevance to the allegations against him, and are "severely prejudicial", "outrageous" and

superfluous. Stachowski Declaration [109], ¶¶4-24. The government responds that the introductory allegations "are necessary to properly understand the forms created by the defendant and the materiality of such forms", and that the allegations in Counts 1 through 8 "give context and clarification to the conduct alleged to have been committed by defendant". Government's Consolidated Response [106], pp. ¶¶43-44.

Fed. R. Crim. P. ("Rule") 7(d) provides that "the court may strike surplusage from the indictment". "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial .' . . . '[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.'" United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir.1990). Since such motions are held to an "'exacting standard'" (id.), they "are rarely granted". United States v. Jimenez, 824 F.Supp. 351, 369 (S.D.N.Y.1993).

"It is axiomatic that an indictment is merely an allegation and proof of nothing. The court routinely instructs the jury on this point. Secondly, there is nothing in the law that requires submission of the indictment to the jury. While the court may elect to do so, the ultimate decision to submit it in its entirety, or in some redacted form, will depend on the nature of the trial evidence when the time comes for making that decision." United States v. Bruno, 2009 WL 2601249, *6 (N.D.N.Y. 2009). Therefore, defendant Manuszewski's motion to strike is denied, without prejudice to renewal before the trial judge.

# CONCLUSION

For these reasons, I order that the motion of defendant Manuszewski to strike surplusage (Stachowski Declaration [109], ¶¶4-49) be denied, without prejudice to renewal before the trial judge, and I further recommend that the motions of defendants Grzebielucha (Terranova Affirmation [87], ¶13), Harnden [90], and Manuszewski (Stachowski Declaration [109], ¶¶51-112) to dismiss counts of the Indictment and the motion of defendant Manuszewski to suppress statements (id., pp. 44-45) be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by October 5, 2012 (applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised

to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: September 18, 2012

                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge